1  Alan Nakazawa, State Bar No. 84670
   alan.nakazawa@cnc-law.com
2  Dena S. Aghabeg, State Bar No. 185311
   daghabeg@cnc-law.com
3  Ken D. Sato, State Bar No. 252543
   ken.sato@cnc-law.com
4  COGSWELL NAKAZAWA & CHANG, LLP
   444 West Ocean Boulevard, Suite 1250
5  Long Beach, California  90802-8131
   Telephone (562) 951-8668
6  Facsimile: (562) 951-3933

7  Attorneys for Defendant
   Korea Line Corporation
8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLD FUEL SERVICES (SINGAPORE) PTE LTD., trading as WORLD FUEL COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>KOREA LINE CORPORATION,<br><br>Defendant *in personam,*<br><br>and<br><br>The Master of the M/V NEW HORIZON, United Spiral Pipe, LLC<br>USS-POSCO Industries<br>Fritz Maritime Agencies<br>Metropolitan Stevedore Company<br>SA Recycling LLC<br>Boliden Sulex, Inc.<br><br>Garnishees. | CASE NO.: 11-CV-1334 MMM (MANx)<br><br>OPPOSITION OF KOREA LINE CORPORATION TO WORLD FUEL SERVICES (SINGAPORE) PTE LTD.'S EX PARTE APPLICATION FOR AN EXPEDITED HEARING AUTHORIZING ISSUANCE OF SUPPLEMENTAL PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT |

Defendant Korea Line Corporation ("KLC"), making a restricted appearance pursuant to Supplemental Admiralty Rule E(8), hereby submits its opposition to the

Opposition Of Korea Line Corporation To World Fuel Services (Singapore) PTE LTD.'s Ex Parte Application For An Expedited Hearing Authorizing Issuance Of Supplemental Process Of Maritime Attachment And Garnishment

1

*ex parte* application of World Fuel Services (Singapore) Pte Ltd. ("World Fuel") for an expedited hearing authorizing issuance of supplemental process of maritime attachment and garnishment.

The principal amount claimed by World Fuel for non-payment of bunkers supplied by World Fuel to the vessel GLOBAL BONANZA on January 19, 2011, at Sasebo, Japan, and to the vessel NAVIOS BONHEUR in Caofeidian, China on January 21, 2011, is the amount of $905,085.10. World Fuel has applied *ex parte* to increase the amount of the writ of attachment and garnishment in this action of property of KLC within the District from $980,596.99, the amount of the original Verified Complaint (included interest, administrative expenses and attorneys' fees), to $1,706,596, the amount of its First Amended Verified Complaint filed February 22, 2011. Pending before the Court is KLC's *ex parte* application requesting that the court fix the amount of cash security that would be adequate to secure the claim of World Fuel against KLC for payment the two bunker deliveries, and to also set the amount of cash security to be deposited by KLC into the registry of the Court should KLC seek only the release of the attachment of the bunkers on board the M/V NEW HORIZON, which sits idle in port. A decision by the Court on KLC's *ex parte* application may make World Fuel's application moot or at least change the relief sought by World Fuel.

World Fuel increased the amount of damages alleged in its First Amended Complaint and the security it is seeking for its attachment and garnishment claim based on a specious claim of interest in the amount of $651,600 (24% per annum for a period of 36 months, if appealed). Even assuming World Fuel is entitled to interest on unpaid amounts due for the bunkers at this exorbitant interest rate, which is denied by KLC, the amount prayed for in the First Amended Complaint and the security sought for the writ of attachment and garnishment is excessive and unreasonable.

First, if as World Fuel's counsel has said World Fuel's bunker claim is

"indefensible", World Fuel can certainly expect to obtain judgment of its claim (or dismissal if it is not meritorious) far sooner than 36 months. It is unlikely that the Court will allow this type of collection contract case to sit on the court's docket for that period of time.

Second, World Fuel says a 36 month term for interest is "fairly stated" or "even slightly understated" because the average time that a civil case takes from filing to trial and to complete appeal is 38 months and frequently longer. Thus, it is clear that World Fuel's interest calculation includes post-judgment interest or interest accruing during the hypothetical appeal period (the appeal will occur after judgment is rendered in the District Court). Even if the contract default interest rate of 24% claimed by World Fuel was enforceable, it would not apply to post-judgment interest. Under federal law, "once a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises. *Kotsopoulos v. Asturia Shipping Co.,* 467 F. 2d 91, 95 (2d. Cir. 1972); *Comerica Bank,* 2009 WL 4646894, at *4 (E.D. Mich. 2009)("[A] default rate of interest, without more, does not amount to a post-judgment interest."). Under federal law, post-judgment interest is assessed in accordance with 28 U.S.C. §1961. The post judgment interest for the week of February 11, 2011 was 0.30%.

Some federal courts have allowed parties to contract around 28 U.S.C. §1961 and apply the contract interest rate to post-judgment interest. However, these cases require "language expressing an intent that a particular interest rate apply to judgments or judgment debts" to be "clear, unambiguous and unequivocal." *FCS Advisors*, 605 F. 3d 144, at 148 (2nd Cir. 2010); *In re Riebesell,* 586 F. 3d 782, at 794-95 (10th Cir. 2009)(promissory note providing for interest on unpaid sums to be 24% per annum held not to constitute an agreement on post judgment interest). For a recent discussion of the law regarding contracting around Section 1961 see *In Jack Henry & Associates, Inv. v. BSC, Inc.*, 2010 WL 4670455, at *2 (E.D. Ky. 2010).

1   In this case, there is no provision in the bunker contract attached to the First
2   Amended Complaint that "clearly, unambiguously and unequivocally" expresses an
3   intent to apply the default interest rate of 2% per month to judgments or post
4   judgment interest.
5   World Fuel seems to think that KLC is seeking an "injunction" against World
6   Fuel pursuing its entire $1,706,596 claim.  World Fuel is mistaken.  At this stage of
7   the proceedings, KLC is only asking that the court determine what security is
8   adequate to secure World Fuel's claim under Supplemental Admiralty Rule E(5)(a).
9   Moreover, to clarify World Fuel's misconceptions, KLC is not seeking to post
10  as security a "general bond" under Supplemental Admiralty Rule E(5)(b) nor does
11  that provision apply to this case.  KLC is only requesting that the court fix the amount
12  of cash security that KLC needs to deposit in the court registry if it wishes to have the
13  writ of attachment and garnishment against property of KLC within the District,
14  including the bunkers on board the M/V NEW HORIZON, released and vacated,
15  because the parties have been unable to agree on the amount.
16  Further, the General Bond provisions of Supplemental Admiralty Rule E(5)(b)
17  do not apply here.  A General Bond applies, by its terms, where an owner of a *vessel*
18  arrested or attached, wishes to post a general bond to answer for claims against that
19  vessel that *may be filed in the future*.  The General Bond provisions do not apply
20  where property has been attached pursuant to a maritime attachment and garnishment
21  and the defendant is trying to deposit adequate security to release the attachment of
22  property other than a vessel for claims that have already been issued.

> "The Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure provide for release of an arrested vessel on the giving of either a "special bond" [Rule E(5)(a)] or a "general bond" [Rule E(5)(b)]. *The special bond is given for libels that have already issued*. If the parties do not agree on an amount, it is to be 'an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs.' On the other hand, *a general bond is given for actions that may subsequently be brought in*

Opposition Of Korea Line Corporation To World Fuel Services (Singapore) PTE LTD.'s Ex Parte Application For An Expedited Hearing Authorizing Issuance Of Supplemental Process Of Maritime Attachment And Garnishment

4

*which the vessel may be attached or arrested.* (citations omitted)" [Emphasis added].

*Overstreet v. Water Vessel Norkong,* 706 F. 2d 641, 644 (5th Cir. 1983); *See also Gyasi v. M/V ANDRE*, 2008 A.M.C. 901, 2008 WL 162644 at *3 (S.D. Fla. 2008).

In this case, the writ of attachment and garnishment has already has already been issued and bunkers on board the M/V NEW HORIZON have already been attached. Hence, this case involves process already issued. Further, this case does not involve the attachment or *in rem* arrest of a vessel to which the General Bond provisions could apply.

Under the Special Bond provisions of Supplemental Admiralty Rule E(5)(a), the court may fix the nature and amount of security to cover the amount of plaintiff's claim "fairly stated with accrued interest and costs." In this case, the amount of security sufficient to cover the Plaintiffs' claim "fairly stated" is significantly less than $1.7 million sought by Plaintiffs in their First Amended Complaint for the reasons stated above and the Court should deny Plaintiffs' application to increase the amount of the writ of attachment and garnishment to the amount of $1,705,596. There is no reasonable basis for security at this level on a contract claim in the principal sum of $905,085.10 and the Court should deny World Fuel's *ex parte* application.

Respectfully submitted,

Dated: February 24, 2011                COGSWELL NAKAZAWA & CHANG LLP


By:   /s/ Alan Nakazawa
      Alan Nakazawa
      Attorneys for Defendant
      Korea Line Corporation